# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) **Civil Action No.** _____ |
| AARON M. FREY <br> IN HIS CAPACITY AS <br> ATTORNEY GENERAL OF THE <br> STATE OF MAINE, | ) <br> ) <br> ) <br> ) <br> ) |
| and | ) <br> ) |
| WILLIAM N. LUND, <br> IN HIS CAPACITY AS <br> SUPERINTENDENT OF THE <br> MAINE BUREAU OF CONSUMER <br> CREDIT PROTECTION | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

## COMPLAINT

## INJUNCTIVE RELIEF SOUGHT

Plaintiff Consumer Data Industry Association hereby complains as follows:

## PARTIES

1. Plaintiff Consumer Data Industry Association ("CDIA") is an international trade association founded in 1906, which is organized under the laws of Missouri with its principal place of business in Washington, D.C. CDIA's membership includes the three nationwide credit reporting agencies ("CRAs"), Experian, Equifax, and Trans Union, and other CRAs that furnish information concerning Maine consumers. In its more than 100-year history, CDIA has worked with the U.S. Congress and with State legislatures to develop laws and regulations governing the

collection, use, maintenance, and dissemination of consumer report information. In this role, CDIA participated in the efforts leading to the enactment of the Fair Credit Reporting Act ("FCRA") in 1970 and every subsequent amendment to the FCRA. In this role, CDIA also represents the interests of the consumer reporting industry before every State legislature.

2. Defendant Attorney General Aaron M. Frey is the state official responsible for enforcement through civil action of Maine's Fair Credit Reporting Act under 10 M.R.S. § 1310-A.

3. Defendant Superintendent William N. Lund is the state official responsible for the administration and enforcement of Maine's Fair Credit Reporting Act under 10 M.R.S. § 1310-A.

## JURISDICTION AND VENUE

4. This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*, specifically, 15 U.S.C. § 1681c and 1681t(b), and the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202. This Court has jurisdiction pursuant to 28 U.S.C. §§1331. Plaintiff's cause of action is based upon, and seeks judicial interpretation of, 15 U.S.C. §1681 *et seq.*, including but not limited to §1681c, which is given express preemptive effect by §1681t(b)(E) as they relate to Maine's attempt to limit consumer report content governed by the FCRA.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## BACKGROUND

6. On May 8, 2019, L.D. 110, An Act Regarding Credit Ratings Related to Overdue Medical Expenses, became law without the signature of Governor Mills. L.D. 110 was codified at Chapter 77 and became effective on September 19, 2019.

7. On June 21, 2019, L.D. 748, An Act to Provide Relief to Survivors of Economic Abuse, was signed by Governor Mills. L.D. 748 was codified at Chapter 407 and became effective on September 19, 2019.

8. L.D. 110 and L.D. 748 amended the Maine Fair Credit Reporting Act, 10 M.R.S. §§ 1306 *et seq.*, to add state-specific categories of information that cannot be included in consumer credit reports.

9. The imminent enforcement of L.D. 110 and L.D. 748 will undermine the accuracy, integrity, and reliability of consumer report information that is essential to the "needs of commerce" and the "efficiency of the banking system" throughout the United States. *See* 15 U.S.C. § 1681.

## FCRA AND FEDERAL PREEMPTION

10. When enacting the Fair Credit Reporting Act, the U.S. Congress found that:

> (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (2) An elaborate system has developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> (4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. §1681(a).

11. Congress also made clear that the purpose of the FCRA is to:

> [R]equire that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and

other information which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information….

15 U.S.C. §1681(b).

12. In order to meet the goals of the FCRA, Congress required that the accuracy and integrity of consumer report information be subject to a uniform, national standard. It prohibited states from interfering in those aspects of consumer reporting that are fundamental to the national uniformity of the system. *See*, gen., 15 U.S.C. §1681t. The statute thus sets out express limits on the impact of state law regarding consumer reports, including the information contained in consumer reports. The FCRA, at §1681t, in pertinent part, specifically prohibits states from attempting to regulate the content of consumer reports as follows:

> (b) General exceptions
>
> No requirement or prohibition may be imposed under the laws of any State:
>
> (1) with respect to any subject matter regulated under
>
> * * *
>
> (E) **section 1681c of this title, relating to information contained in consumer reports,** except that this subparagraph shall not apply to any State law in effect on September 30, 1996.

15 U.S.C. §1681t(b)(1)(E) (emphasis added). Thus, any state law that attempts to regulate the content of consumer reports is preempted under the FCRA (unless it was in effect on September 30, 1996).

13. L.D. 110 adds 10 M.R.S. § 1310-H(4) to read:

> **4. Reporting of medical expenses on a consumer report**. Notwithstanding any provision of federal law, a consumer reporting agency shall comply with the following provisions with respect to the reporting of medical expenses on a consumer report.
>
> A. A consumer reporting agency may not report debt from medical expenses on a consumer's consumer report when the date of the first delinquency on the debt is less than 180 days prior to the date that the debt is reported.

4

B.  Upon the receipt of reasonable evidence from the consumer, creditor or debt collector that a debt from medical expenses has been settled in full or paid in full, a consumer reporting agency:

(1) May not report that debt from medical expenses; and

(2) Shall remove or suppress the report of that debt from medical expenses on the consumer's consumer report.

C.  As long as the consumer is making regular, scheduled periodic payments toward the debt from medical expenses reported to the consumer reporting agency as agreed upon by the consumer and medical provider, the consumer reporting agency shall report that debt from medical expenses on the consumer's consumer report in the same manner as debt related to a consumer credit transaction is reported.

14. L.D. 748 adds 10 M.R.S. § 1310-H(2-A) to read, in relevant part:

**2-A.  Economic abuse**.  Except as prohibited by federal law, if a consumer provides documentation to the consumer reporting agency as set forth in Title 14, section 6001, subsection 6, paragraph H that the debt or any portion of the debt is the result of economic abuse as defined in Title 19-A, section 4002, subsection 3-B, the consumer reporting agency shall reinvestigate the debt. If after the investigation it is determined that the debt is the result of economic abuse, the consumer reporting agency shall remove any reference to the debt or any portion of the debt determined to be the result of economic abuse from the consumer's credit report.

15. In addition to other impracticalities and unreasonable burdens on the CRAs, L.D. 110 and L.D. 748 attempt to regulate the content of consumer reports.  Such attempt to regulate the content of consumer reports is expressly preempted by the FCRA.

## CLAIM FOR DECLARATORY JUDGMENT

16. Plaintiff and Defendants have fundamental disagreements regarding the interpretation and application of 15 U.S.C. §1681c, §1681t, L.D. 110 and L.D. 748.

17. L.D. 110 prohibits a CRA from reporting certain accounts unless certain conditions exist, which are known only to the furnisher/account holder and the consumer.  Thus,

the CRA would be required to review the status of every account, including payment activity, etc. or it may not report the account at all.

18.     L.D. 748 requires CDIA's member CRAs to not only reinvestigate whether information it reported was accurately reported by the furnisher (which all CRAs must do per the FCRA), it requires the CRA to adjudicate whether that account was the result of "economic abuse" of the consumer, thereby impacting the creditor and the consumers' rights, and further prohibits the CRA from including that information from its reports.  While the prevention of economic abuse is a laudable goal, putting the responsibility on CRAs to adjudicate the legal effect of a contract is effectively creating an end-run around the parties' legal rights and the legal system.  CRAs are not in a position to adjudicate such claims, and lack sufficient knowledge and expertise to do so.

19.     Effectively, compliance with both L.D. 110 and L.D. 748 will require CDIA's member CRAs to reject accurate credit information.

20.     The prohibitions established by L.D. 110 and L.D. 748 will harm CDIA's member CRAs by impeding their ability to report accurate and predictive data relied on by their customers for credit underwriting and other legitimate purposes.  Creditors' inability to accurately assess credit risk will result in increased delinquencies and potentially increase the price, and decrease the availability, of consumer credit.

21.     The interests CDIA seeks to protect in this action are central to CDIA's mission. CDIA's members will suffer immediate and irreparable harm if they are forced to comply with a State law that is preempted by the FCRA. The Court's favorable determination concerning the federal preemption and injunctive relief issues presented in this Complaint will prevent this harm.

22. Because L.D. 110 and L.D. 748 attempt to exclude information from being included in consumer reports where the FCRA expressly contemplates the inclusion of such information, it is expressly preempted by federal law. 15 U.S.C. §1681t(b)(1)(E).

23. Because CDIA's member CRAs are subject to the prohibitions set forth in L.D. 110 and L.D. 748, there is an actual controversy over which this Court has jurisdiction to award declaratory and injunction relief under 28 U.S.C. §§ 2201 *et seq*.

24. CDIA and its members are entitled to the entry of injunctive relief prohibiting L.D. 110 and L.D. 748 from being enforced because it is expressly preempted by 15 U.S.C. § 1681t(b)(1)(E).

## REQUEST FOR RELIEF

Wherefore, Plaintiff CDIA requests the Court award it the following relief:

A. A declaratory judgment, pursuant to 28 U.S.C. § 2201, that L.D. 110 is preempted by federal law.

B. A declaratory judgment, pursuant to 28 U.S.C. § 2201, that L.D. 748 is preempted by federal law.

C. Such other and further relief as the Court deems just and proper.

Dated at Augusta, Maine this 26th day of September, 2019.

                Respectfully submitted,

                /s/ Ryan P. Dumais
                Ryan P. Dumais
                Eaton Peabody
                77 Sewall Street #3000
                Augusta, ME 04330
                Phone: (207) 622-3747
                Fax: (207) 622-9732
                rdumais@eatonpeabody.com

Gretchen L. Jones
Eaton Peabody
167 Park Row
P.O. Box 9
Brunswick, ME 04011
Phone: (207) 729-1144
Fax: (207) 729-1140
gjones@eatonpeabody.com

Mary Kathryn Hawkins
Hudson Cook LLP
22 Free Street
Suite 205
Portland, ME 04101
Phone: (207) 210-6836
Fax: (207) 541-9557
khawkins@hudco.com

Rebecca E. Kuehn
Hudson Cook LLP
1909 K Street NW
4th Floor
Washington, DC 20006
Phone: (202) 715-2008
Facsimile: (202) 223-6935
rkuehn@hudco.com

Attorneys for Plaintiff
Consumer Data Industry Association