UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 1:19-cv-00438-LEW |
| AARON M. FREY, in his official capacity as Attorney General of the State of Maine, | ) ) ) ) ) | |
| and | ) ) | |
| LINDA J. CONTI, in her official capacity as Superintendent of the Maine Bureau of Consumer Credit Protection, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND ORDER**

The matter is before the Court following an order of the First Circuit vacating this Court's Order on Pending Motions (ECF No. 41) and remanding for further proceedings, *see Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 777 (2023), and supplemental briefing on dispositive motions that seek judgment on a stipulated record. Pl.'s Second Mot. for J. (ECF No. 65); Defs.' Opp'n and Cross-Motion for J. (ECF No. 66).

The case presents the question whether certain provisions of the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, preempt the application or enforcement of certain

provisions of the Maine Fair Credit Reporting Act, 10 M.R.S. §§ 1306 *et seq*.  For reasons that follow, the Judgment in this matter will award limited declaratory relief to the Plaintiff, Consumer Data Industry Association.

## BACKGROUND

This background recounts a tale already told in two judicial decisions.  Accordingly, the retelling is short and presumes an informed reader.

### A. Issues and Stipulated Facts

Pursuant to the First Circuit's Opinion and this Court's March 29, 2023, Procedural Order (ECF No. 62), the following issues require resolution:

1. Whether, and if so to what extent, 15 U.S.C. § 1681t(b)(1)(E) (incorporating by reference 15 U.S.C. § 1681c) partially preempts Maine's Medical Debt Reporting Act, 10 M.R.S. § 1310-H(4), or its Economic Abuse Debt Reporting Act, *id.* § 1310-H(2-A).

2. Whether, and if so to what extent, 15 U.S.C. §§ 1681c(a)(7) and (a)(8) partially preempt Maine's Medical Debt Reporting Act in relation to its application to the medical debt of veterans.

3. Whether, and if so to what extent, 15 U.S.C. § 1681t(b)(5)(C) preempts Maine's Economic Abuse Debt Reporting Act.

The parties have agreed that the issues are to be resolved on the stipulated record compiled for the prior contest that resulted in the vacated Order on Pending Motions.  In that regard, the parties have stipulated that Plaintiff's members report consumer medical debt in a manner that complies with federal law but would not comply with Maine law, that they would not otherwise maintain procedures to "reinvestigate" debt said to result from economic abuse or to remove it from a credit report pursuant to a reinvestigation, that they will have to take affirmative steps and revise procedures to comply with the requirements

of Maine law, that Defendant Conti is empowered to investigation and enforce compliance, and that they may be subject to both administrative enforcement and private party litigation for failure to comply. Stipulation (ECF No. 14).

### B. Maine Medical Debt Reporting

Following a 2019 amendment to the Maine Fair Credit Reporting Act, Maine law prohibits the reporting of "medical expenses" in a consumer report "when the date of the first delinquency on the debt is less than 180 days prior to the date that the debt is reported," 10 M.R.S. § 1310-H(4)(A), or "[u]pon receipt of reasonable evidence . . . that a debt from medical expenses has been settled in full or paid in full," *id.* § 1310-H(4)(B). It otherwise provides that a consumer credit reporting agency will report debt from medical expenses "in the same manner as debt related to a consumer credit transaction," when "the consumer is making regular, scheduled periodic payments . . . as agreed upon by the consumer and medical provider." *Id.* § 1310-H(4)(C). These provisions will be referred to as the Maine Medical Debt Reporting Act. "Driving the [Act] is the belief that, unlike in the case of the purchase of a house or a car, medical debt is usually unplanned and involuntarily incurred." *Consumer Data Indus. Ass'n*, 26 F.4th at 4.

### C. Maine Economic Abuse Debt Reporting

Also since 2019, Maine law imposes on credit reporting agencies a "reinvestigation" obligation when "a consumer provides documentation . . . that the debt or any portion of the debt is the result of economic abuse." 10 M.R.S. § 1310-H(2-A). Maine law prohibits reporting the debt or any portion of the debt "[i]f after the investigation it is determined

that the debt is the result of economic abuse." *Id.* Economic abuse is elsewhere defined (in Maine's Protection from Abuse statutory scheme) as:

> causing or attempting to cause an individual to be financially dependent by maintaining control over the individual's financial resources, including, but not limited to, unauthorized or coerced use of credit or property, withholding access to money or credit cards, forbidding attendance at school or employment, stealing from or defrauding an individual of money or assets, exploiting the individual's resources for personal gain of the defendant or withholding physical resources such as food, clothing, necessary medications or shelter.

19-A M.R.S. § 4102(5). These provisions will be referred to as the Maine Economic Abuse Debt Reporting Act. "Underlying the Economic Abuse Debt Reporting Act is the belief that many domestic violence cases involve economic abuse. Accordingly, the statute seeks to help domestic violence victims regain control of their finances so they can leave abusive relationships and retake control of their lives." *Consumer Data Indus. Ass'n*, 26 F.4th at 4–5.

### D. The Federal Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA") sets forth a general provision that its terms do not "annul, alter, affect, or exempt any person subject to [its] provisions . . . from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). This general, non-preemption provision is then followed by two exceptions.

The first exception sets forth a lengthy list of matters for which "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject

4

matter regulated under" the identified, cross-referenced provisions. *Id.* § 1681t(b). For present purposes, the exceptions of interest concern 15 U.S.C. § 1681c, which has its own itemized list of reporting concerns, including Sections 1681(a)(4) and (a)(5), which address, respectively, "[a]ccounts placed for collection or charged to profit and loss" and "[a]ny other adverse item of information" that is more than seven years stale; and 15 U.S.C. §§ 1681c(a)(7) and (a)(8), which focus on the reporting of the medical debt of veterans. In particular, the latter two subsections prohibit reporting on a veteran's medical debt before one year following the date medical services were rendered, *id.* § 1681c(a)(7), or once the debt becomes a "fully paid or settled . . . debt that had been characterized as delinquent, charged off, or in collection," *id.* § 1681c(a)(8).

The other exception that animates the current review is drawn from Section 1681t(b)(5)(C), which cross references and prohibits state regulation "with respect to the conduct required by the specific provisions of . . . section 1681c-2." 15 U.S.C. § 1681t(b)(5)(C). The cross-referenced provision relates to blocking the reporting of information "that the consumer identifies as information that resulted from an alleged identity theft." *Id.* § 1681c-2(a). To secure identity-theft-related reporting protection, the consumer must provide the reporting agency with certain information, including an identity theft report. *Id.* § 1681c-2(a)(2).

## DISCUSSION

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Due to the Supremacy Clause, when Congress

5

enacts a statute state law is preempted to the extent of any conflict with the federal statute. *Haaland v. Brackeen*, 599 U.S. 255, 287 (2023). Sometimes a federal statute will expressly preempt state law, but preemption also can arise "by virtue of restrictions or rights that are inferred from statutory law." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020). Here we are concerned chiefly with whether the identified terms and cross-references found in the FCRA's express preemption provision, 15 U.S.C. § 1681t, override Maine's attempt to regulate the reporting of medical debts and debts arising from economic abuse. *Consumer Data Indus. Ass'n*, 26 F.4th at 5 (1st Cir. 2022), *cert. denied,* 143 S. Ct. 777 (2023) (explaining that the case-specific "inquiry reduces to whether the [Maine] Amendments are swept into the maw of FCRA preemption, and in particular, that of express preemption").[1]

In short, the inquiry focuses on the intent of Congress as inferred from the language it chose to express its intent not to "annul, alter, affect, or exempt any person . . . from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). This language "formulates a general rule against preemption," *Consumer Data Indus. Ass'n*, 26 F.4th at 6, but directs courts to look for regulatory inconsistency in the commands of the FCRA and state law, and, if found, to provide a remedy "only to the extent of the inconsistency." 15 U.S.C. §

---

[1] I have not applied any presumption against preemption. *See Medicaid & Medicare Advantage Prods. Ass'n of Puerto Rico, Inc. v. Emanuelli Hernandez*, 58 F.4th 5, 11 (1st Cir. 2023).

1681t(a). This is in keeping with the standard approach to preemption under the Supremacy Clause. *See Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) ("If federal law 'imposes restrictions or confers rights on private actors' and 'a state law confers rights or imposes restrictions that conflict with the federal law,' 'the federal law takes precedence and the state law is preempted.'" (quoting *Murphy v. National Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1480 (2018)).

Before turning to the three issues remaining for resolution, I pause to recite some received wisdom; specifically, that Section 1681t(b)(1)(E) does not preempt "all state laws 'relating to information contained in consumer reports,' regardless of whether they regulate subject matter regulated by Section 1681c." *Consumer Data Indus. Ass'n*, 26 F.4th at 6. Additionally, 15 U.S.C. § 1681c(a)(7) and (a)(8) "do not preempt the Medical Debt Reporting Act insofar as it regulates non-veterans' medical debt." *Id.* at 14.

**A. Whether, and if so to what extent, 15 U.S.C. § 1681t(b)(1)(E) (incorporating by reference 15 U.S.C. § 1681c) partially preempts Maine's Medical Debt Reporting Act, 10 M.R.S. § 1310-H(4), or its Economic Abuse Debt Reporting Act, *id.* § 1310-H(2-A).**

Observing that Sections 1681c(a)(4) and (a)(5) prohibit the reporting of accounts under collection or charged off and any other adverse information that antedates the reporting activity by more than seven years, Plaintiffs contend that Maine may not regulate the reporting of medical debt or economic abuse debt since both categories of debt would naturally entail accounts and adverse information. I disagree with this analysis.

Although the FCRA provides that a state may not impose a "requirement or prohibition" "with respect to" the itemized subject matters, 15 U.S.C. §§ 1681t(b)(1) & 1681t(b)(1)(E), the subject matters in question are certain categories of information that

are more than seven years stale. Thus, even though the terminology of Section 1681c uses words like "accounts" and "adverse information," the subject matter actually regulated under these provisions is limited to accounts and information that is more than seven years old. Neither subsection (a)(4) or (a)(5) requires or prohibits reporting of information that is not so old. Because neither subsection reveals a congressional intention to preempt state reporting regulation insofar as the information in question is not more than seven years stale,[2] I do not identify a viable facial challenge to the Maine reporting requirements. Reporting agencies should be able to comply with both Maine and federal law without fear that Maine has required them to do something that Congress has expressly foreclosed.[3] The mere fact that Section 1681c lists "items of information" that reporting agencies may not report, 15 U.S.C. § 1681c(a), should not be interpreted as a congressional desire to remove from the field of state regulation all reporting concerning similar information not so prescribed, which regulation is simultaneously, expressly anticipated and permitted by Congress in Section 1681t(a).[4]

---

[2] Plaintiff makes much of the fact that Congress specified that the seven-year period only starts "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." Pl.'s Second Mot. at 10 (quoting 15 U.S.C. § 1681c(c)(1)). But since this provision merely explains how to compute the seven-year period, it does nothing to change the analysis.

[3] Plaintiff asserts that Maine law "affirmatively requires [credit reporting agencies] to report medical debt" even after the seven-year period expires under the FCRA. Pl.'s Second Mot. at 16 (citing 10 M.R.S. § 1310-H(4)). This is an imagined conflict. It is foolish to think that Defendant Conti would ever seek to compel the reporting of medical debt that is more than seven years stale and therefore unreportable under federal law. Indeed, there would be no cause for a consumer to even complain about an agency's reporting activity once the federal, more-than-seven-year bar removed the information from the consumer's report.

[4] Section 1681c provides three exceptions to the subsection (a)(4) and (a)(5) prohibitions against reporting accounts or other adverse information more than seven years stale. *See* 15 U.S.C. § 1681c(b). However, Plaintiff has not articulated why Congress's authorization to report debts more than seven years old for
*(continued next page)*

Plaintiff elsewhere contends that subsection (a)(6) of Section 1681c preempts the Maine medical debt reporting requirements. Pl.'s Second Mot. at 12. Subsection (a)(6) reflects Congress's intention to ensure that reporting agencies do not disclose confidential medical information in their reports, specifically, the "name, address, and telephone number" of a "medical information furnisher" if disclosure would enable someone reading the report to deduce the nature of the medical services rendered. 15 U.S.C. § 1681c. This is a narrowly tailored provision that was not intended to preempt the entire field of reporting requirements related to medical information. The preempted subject matter is limited to reporting activity that reveals the nature of the services rendered and that limited subject matter is the proper, limited scope of both express and conflict preemption. Since the Maine requirements do not trench on the same subject matter, namely medical confidentiality, they are not preempted by subsection (a)(6).[5]

**B. Whether, and if so to what extent, 15 U.S.C. §§ 1681c(a)(7) and (a)(8) partially preempt Maine's Medical Debt Reporting Act in relation to its application to the medical debt of veterans.**

When it comes to reporting the medical debt of veterans, the FCRA prohibits reporting on a veteran's medical debt before one year following the date medical services were rendered, 15 U.S.C. § 1681c(a)(7), or after nce the debt becomes a "fully paid or settled . . . debt that had been characterized as delinquent, charged off, or in collection," *id.*

---

principal amounts of $150,000 or more, underwriting of similarly valued life insurance, or employment of a person at a salary of $75,000 or more, *see id.* § 1681c(b)(1)-(3), would alter the analysis.

[5] By extension, because the subject matter is so limited, Congress's provision of a definition for "medical information," *see* 15 U.S.C. § 1681a(i), does not impliedly preempt state regulation of any and all reporting activity related to medical information.

§ 1681c(a)(8).[6] In contrast, the Maine Medical Debt Reporting Act permits reporting of a medical debt when 180 days have transpired since "the date of the first delinquency on the debt." 10 M.R.S. § 1310-H(4)(A). Because Congress specified in the FCRA that the states cannot impose any "requirement or prohibition" "with respect to any subject matter regulated under . . . section 1681c . . . relating to information contained in consumer report," 15 U.S.C. § 1681t(b)(1)(E), and because section 1681c regulates the subject matter of the earliest timing of reports related to veterans' medical debts, the Maine Medical Debt Reporting Act is partially preempted and section 1310-H(4)(A) is ineffectual and unenforceable as applied to the medical debts of veterans.

Because my review of Plaintiff's Second Motion does not reveal any additional concern over a conflict between section 1681c of the FCRA and subsections (4)(B) and (4)(C) of the Maine Medical Debt Reporting Act, I do not separately address those provisions and regard the matter as waived. *See Consumer Data Indus. Ass'n*, 26 F.4th at 11 n.8.[7]

### C. Whether, and if so to what extent, 15 U.S.C. § 1681t(b)(5)(C) preempts Maine's Economic Abuse Debt Reporting Act.

Plaintiff argues that Congress's regulation of credit reporting when it comes to debts

---

[6] The prohibition applies only to "a consumer reporting agency described in section 1681a(p)," not all reporting agencies. 15 U.S.C. § 1681c(a)(7), (a)(8). The FCRA prohibition thus applies only to consumer reporting agencies "that compile[] and maintain[] files on consumers on a nationwide basis." *Id.* § 1681a(p). The scope of resulting preemption is likewise cabined.

[7] The First Circuit's remand order anticipated the possibility for a detailed examination into the scope of the partial preemptive effect of sections 1681c(a)(7) and 1681c(a)(8) when it comes to veterans' medical debts, *Consumer Data Indus. Ass'n*, 26 F.4th at 12-13. However, Plaintiff's Second Motion does not suggest that Plaintiff is particularly concerned with the extent of partial preemption under these provisions. Nonetheless, to the extent I have identified a conflict I conclude that partial preemption is necessitated.

arising from identify theft sucks all the air from the room when it comes to regulating of any and all forms of economic abuse.

Section 1681t(b)(5)(C) provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to the conduct required by the specific provisions of . . . section 1681c-2." In turn, Section 1681c-2 prescribes a "block" on reporting of information a consumer identifies as the result of identity theft. 15 U.S.C. § 1681c-2(a). It also prescribes certain notification duties for reporting agencies responding to furnishers of information when the consumer properly notifies the agency that the information in question is the result of identity theft. *Id.* § 1681c-2(b). Congress defined "identity theft" as "a fraud committed using the identifying information of another person." 15 U.S.C. § 1681a(3). By contrast, the Maine Economic Abuse Debt Reporting Act is addressed to economic abuse arising from a domestic scenario in which one person dominates another person's finances or financial decisions to impose a state of financial dependency. See 19-A M.R.S. § 4102(5). Although the evils the two statutory schemes address might both be present in relation to a specific consumer debt, the heartland of each statute concerns a distinct societal phenomenon that is unlike the other. For this reason I do not read Section 1681t(b)(5)(C) as an expression of congressional intent to foreclose regulation of reporting activity associated with economic abuse as it is defined in Maine law. Such an interpretation of the FCRA is unreasonable.

Nonetheless, it is relatively easy to imagine a scenario in which a consumer asserts that a debt is the product of both identity theft and economic abuse. For example, a domestic partner or relative might steal one's identity in an act of economic domination,

11

and the resulting debt might be classified as the product of both identity theft and economic abuse. But should the entire field of economic abuse debt reporting be beyond regulation by the states because a few instances of economic abuse could be classified as identity theft?[8] Not to my way of thinking.

Given the language Congress used in the FCRA, state requirements and prohibitions should only be preempted when the matter is capable of classification as identity theft, and then only "with respect to the conduct required" by the FCRA's identity theft reporting regulations. 15 U.S.C. § 1681t(b)(5). In other words, this is a case of partial preemption.[9] When the federal identity theft regulations apply to an act of economic abuse, then the blocking of identity-theft-related reporting activity must proceed according to federal law. But insofar as a given debt is the product of more than mere identity theft, compliance with both federal and state law may be appropriate, depending on the circumstances. Close calls related to curious scenarios should be examined on a case-by-case basis; they should not be foreclosed as the result of a mere facial legal challenge.

---

[8] I reject Plaintiff's assertion that "[t]hat the clear terms of the Economic Abuse Act demonstrate that the majority of challenges to account information will come from consumers who have been deemed victims of identity theft." Pl.'s Second Mot. at 23. Some overlap is evident, but it is not clear that most challenges under Maine law will involve identity theft.

[9] I also reject Defendants' statement that "even in cases where economic abuse is also identity theft, the Economic Abust Debt Reporting Law is not preempted because the conduct it requires is different than the conduct required by the 'specific provisions' of Section 1681c-2." Def.'s Opp'n and Cross-Mot. at 17. It is contrary to Congressional intent and basic preemption principles to find that credit reporting agencies could be subject to as many as 50 state reporting requirements for alleged identity-theft debts when Congress has regulated that very subject matter and proscribed the imposition of additional conduct requirements. As Plaintiff asserts, "A state cannot regulate a federally occupied field by simply crafting a broad law that encircules the field." Pl.'s Reply at 7. However, I agree with the Attorney General and the Secretary that Congress did not intend to foreclose state regulation of reporting on the wider field of economic-abuse debts captured by the Economic Abuse Dept Reporting Act, including debts that may be the product of both identity theft and other forms of economic abuse.

Plaintiff otherwise argues that it is nonsensical and procedurally improper for a state to direct a reporting agency to engage in a focused investigation related to economic abuse, since creditors have no meaningful method of responding "to the allegations of abuse that purport to absolve the consumer of financial liability with respect to the account." Pl.'s Second Mot. at 19-20 (citing, *inter alia*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)). This assertion overstates the issue and is unproductive. We are concerned here with reporting obligations, not absolution of a consumer's financial liability to a creditor. *See* 10 M.R.S. § 1310-H(2-A) ("If after the investigation it is determined that the debt is the result of economic abuse, the consumer reporting agency shall remove and reference to the debt or any portion of the debt determined to be the result of economic abuse from the consumer's credit report."). Moreover, "appealing to a judicial policy preference should never be enough to win preemption of a state law." *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901 (2019). *See also Consumer Data Indus. Ass'n*, 26 F.4th at 10 ("With a statutory text and structure such as we have examined, weighing of policy is up to Congress.").

## CONCLUSION

Judgment will enter for Plaintiff IN PART and for Defendants IN PART, and declaratory relief is awarded as follows:

Title 15 U.S.C. § 1681t(b)(1)(E) does not preempt all state laws relating to information contained in consumer reports. *Consumer Data Indus. Ass'n*, 26 F.4th at 6. Nor does Title 15 U.S.C. § 1681t(b)(1)(E) (incorporating by reference 15 U.S.C. § 1681c) partially preempt Maine's Medical Debt Reporting Act, 10 M.R.S. § 1310-H(4), or its

13

Economic Abuse Debt Reporting Act, *id.* § 1310-H(2-A).

Title 15 U.S.C. §§ 1681c(a)(7) and (a)(8) do not preempt the Medical Debt Reporting Act insofar as they regulate non-veterans' medical debt. *Consumer Data Indus. Ass'n*, 26 F.4th at 14. However, the provisions partially preempt Maine's Medical Debt Reporting Act, such that 10 M.R.S. § 1310-H(4)(A) is ineffectual and unenforceable insofar as it purports to govern the timing of reporting on the medical debts of veterans by a consumer reporting agency described in 15 U.S.C. § 1681a(p) (*i.e.*, a reporting agency that compiles and maintains files on consumers on a nationwide basis).

Title 15 U.S.C. § 1681t(b)(5)(C) partially preempts Maine's Economic Abuse Debt Reporting Act, 10 M.R.S. § 1310-H(2-A). Specifically, when the identity-theft regulation crafted by Congress in 15 U.S.C. § 1681t(b)(5)(C) applies and identify theft is the only method of economic abuse identified by the consumer, the blocking of reporting activity on identity-theft-related grounds must proceed according to federal requirements and state requirements are of no effect. However, Plaintiff's facial challenge does not support preemption of Maine's Economic Abuse Debt Reporting Act insofar as a consumer's debt is alleged to be the product of economic abuse carried out by means other than or in addition to identity theft.

**SO ORDERED.**

Dated this 9th day of January, 2024.

                                                       /s/ Lance E. Walker
                                                   UNITED STATES DISTRICT JUDGE