## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MAINE

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>    Plaintiff,<br><br>        v.<br><br>AARON M. FREY, in his official capacity as the Attorney General of the State of Maine, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO.: 1:19-cv-00438-LEW |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT, WITH INCORPORATED MEMORANDUM OF LAW

More than six years after filing a seven-page, 24-paragraph complaint challenging two Maine laws regulating the content of consumer reports, CDIA now seeks leave to amend to file a 33-page, 136-paragraph complaint challenging those laws. While CDIA claims that the purpose of the amendments is to "address newly available claims" after one of the laws (the one restricting the reporting of medical debt) was recently amended, M. to Amend, 1, this is simply not so. The original medical debt reporting law prohibited consumer reporting agencies from reporting debt arising from medical expenses when the debt was less than 180 days old or when the consumer had paid or settled the debt in full. While the amended law is more restrictive because it flatly prohibits the reporting of medical debt, that is simply a matter of degree and does not give rise to any claim that CDIA did not have at the outset.

The new preemption and First Amendment claims CDIA seeks to add were available to CDIA regardless of whether Maine law prohibited the reporting of all medical debt or only some of it. Moreover, the other law at issue, which prohibits the reporting of debt resulting from

economic abuse, has not been amended.  There is thus no basis for CDIA to amend its complaint to assert new preemption and First Amendment challenges to that law.  Nor should CDIA be permitted  to add as a new plaintiff a furnisher of credit information, inasmuch as this would interject a new preemption issue.  Finally, adding a First Amendment claim will likely necessitate discovery, potentially generate a need for expert testimony, and give rise to factual disputes, resulting in even further delays in the final resolution of this case and additional burdens on defendants.  In sum, because of undue delay and prejudice to the defendants, the Court should deny CDIA's motion to amend.

## MEMORANDUM OF LAW

### Background

On September 26, 2019, CDIA filed a complaint alleging that two Maine laws regulating the content of consumer reports were preempted by the federal Fair Credit Reporting Act ("FCRA").  ECF No. 1.  One law, which CDIA refers to as the "Medical Debt Provision," prohibited consumer reporting agencies from reporting medical debt that was delinquent less than 180 days or that had been settled or paid in full.  Maine Pub. L. 2019, ch. 77, § 2. [1]  The other law, which CDIA refers to as the "Economic Abuse Provision," requires consumer reporting agencies to conduct an investigation if a consumer provides documentation that a debt is the result of economic abuse and requires agencies to remove debts from consumer reports that they confirm are the result of economic abuse.  10 M.R.S. § 1310-H(2-A).

CDIA's complaint made a single preemption argument – that both the Medical Debt Provision and the Economic Abuse Provision (collectively, the "Provisions") are preempted by a

---

[1] The law also required consumer reporting agencies to report medical debt in the same manner as debt related to a consumer credit transaction when the consumer was making periodic payments on the debt pursuant to an agreement with the medical provider.  Maine Pub. L. 2019, ch. 77, § 2.

section in FCRA prohibiting states from imposing requirements or prohibitions "with respect to any subject matter regulated under. . . section 1681c of this title, relating to information contained in consumer reports." Complaint, ¶ 12 (ECF No. 1) (quoting 15 U.S.C. § 1681t(b)(1)(E)); *see also id*., ¶¶ 22, 24. CDIA alleged that this means that "any state law that attempts to regulate the content of consumer reports is preempted under the FCRA . . ." *Id*., ¶ 12. [2]

The First Circuit rejected CDIA's argument that Section 1681t(b)(1)(E) preempts all state laws regulating the content of consumer reports. *Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1 (1st Cir. 2022). The court instead held that "Section 1681t(b)(1)(E) narrowly preempts state laws that impose requirements or prohibitions with respect to the specific subject matters regulated under Section 1681c." *Id*., 14. The court remanded the case to this Court to consider whether the Provisions intrude on subject matter regulated under Section 1681c.

On remand, this Court held that 1) 15 U.S.C. § 1681c(a)(1)-(5), which regulates the reporting of various types of obsolete adverse information, does not preempt the Provisions; 2) 15 U.S.C. § 1681c(a)(6), which regulates the inclusion on consumer reports of the names, addresses, and telephone numbers of medical providers, does not preempt the Medical Debt Provision; 3) 15 U.S.C. § 1681c(a)(7)-(8) preempts the Medical Debt Provision only as applied to veterans; and, 4) 15 U.S.C. § 1681t(b)(5)(C) preempts the Economic Abuse Provision only as applied to economic abuse debt that is solely the product of identity theft. *Consumer Data Indus. Ass'n v. Frey*, 710 F. Supp. 3d 73, 79-83 (D. Me. 2024).

---

[2] CDIA subsequently argued in briefing that the Economic Abuse Provision is preempted 15 U.S.C. § 1681t(b)(5)(C), which prohibits states from imposing requirements or prohibitions "with respect to the conduct required by the specific provisions of . . . section 1681c-2 of this title." Section 1681c-2 requires credit reporting agencies to block information regarding transactions resulting from alleged identity theft upon proper notification from a consumer. 15 U.S.C. § 1681c-2.

On February 8, 2024, CDIA appealed.  ECF No. 72.  Subsequently, the Legislature passed, and the Governor signed, Me. Pub. L. 2025, ch. 201, "An Act to Strengthen Consumer Protections by Prohibiting the Reporting of Medical Debt on Consumer Reports," referred to by CDIA as the "Medical Debt Ban." [3]  The Act amends 10 M.R.S. § 1310-H(4) to flatly prohibit consumer reporting agencies from reporting medical debt – thus, even after 180 days medical debt cannot be reported. [4]  The Act also prohibits medical creditors, debt collectors, and debt buyers (all of which are defined) from reporting a consumer's medical debt to a consumer reporting agency.  The Medical Debt Ban took effect on September 24, 2025.  *See* Me. Const. Art IV, Pt. 3, § 16 (nonemergency laws take effect ninety days after recess of the legislative session in which they were passed).  On September 24, 2025, the First Circuit granted CDIA's motion to remand the case to this Court "in light of recent material changes in the medical-debt provision of Maine law." ECF No. 77.

CDIA now seeks to amend its complaint to add various additional claims.  As before, CDIA continues to claim (despite the First Circuit's holding to the contrary) that Section 1681t(b)(1)(E) completely prohibits states from regulating the content of credit reports.  Ex. A to M. to Amend (ECF No. 89-1), ¶¶ 17, 115.  It wants to add an argument that both Provisions are preempted by 15 U.S.C. § 1681t(a), which preempts state laws to the extent that they are "inconsistent" with FCRA.  *Id*., ¶¶ 17, 117.  It also wants to add an argument that both Provisions are implicitly preempted because they "stand as an obstacle to accomplishing Congress's objectives in passing

---

[3] *See* https://www.mainelegislature.org/legis/bills/getPDF.asp?paper=SP0237&item=3&snum=132.
[4] And because of this flat prohibition, the Act struck the provisions in Section 1310-H(4) regulating the reporting of settled medical debt and medical debt on which a consumer is making regular payments.

the FCRA." *Id*., ¶¶ 17, 118.  Beyond the new preemption claims, CDIA seeks to add a claim that both Provisions violate the First Amendment.  *Id*., ¶¶ 126-136.[5]

CDIA also seeks to add as a new plaintiff a furnisher of credit information – The Thomas Agency.  *Id*., ¶ 30.  And in connection with adding that new plaintiff, CDIA seeks to add a new preemption claim – that both Provisions are preempted by 15 U.S.C. § 1681t(b)(1)(F).  *Id*., ¶¶ 17, 83, 115.  That section preempts states from imposing requirements or prohibitions with respect to matters regulated by 15 U.S.C. § 1681s-2, which addresses the responsibilities of persons who furnish information to consumer reporting agencies.

### Argument

Under Fed. R. Civ. P. 15(a)(2), a court should "freely give leave [to amend] when justice so requires." [6]  But "undue delay, on its own, may be sufficient to justify denying a motion for leave to amend." *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."); *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19-20 (1st Cir. 1979).

A delay is "undue" when it is both "substantial and unjustified." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 37 (1st Cir. 2022).  When "a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden

---

[5] Although most of CDIA's First Amendment allegations relate only to the Medical Debt Ban, one paragraph alleges that the Economic Abuse Provision violates the First Amendment.  *Id*., ¶ 135.
[6] When a party seeks leave to amend after expiration of the deadline for amendments set forth in a scheduling order, "Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015); *see also Sargent v. NorDx*, No. 2:20-CV-00467-JAW, 2022 WL 17738711, at *5 (D. Me. Dec. 16, 2022).  Here, though, the Court did not establish a deadline for amending pleadings.

upon the movant to show some valid reason for his neglect and delay." *Hayes*, 602 F.2d at 19-20 (cleaned up). "[P]rotracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" *Id*. (quoting *Acosta–Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 52–53 (1st Cir.1998)). A motion to amend is properly denied when a plaintiff is simply "scrambling" to devise new theories of liability based on the facts originally pled. *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 391 (1st Cir. 2013).

CDIA seeks leave to amend its complaint to add claims that it alleges were not available to it before the Medical Debt Provision was amended. *See, e.g.,* M. to Amend, at 1 ("This Court should grant CDIA leave to amend its Complaint to address newly available claims against the Medical Debt Ban. . . ."). It is not true that these are "newly available claims." All of the claims CDIA seeks to add were available to it when it first filed this lawsuit. Thus, by waiting over six years, CDIA has unduly delayed in seeking to amend its complaint.

With respect to the Economic Abuse Provision, CDIA necessarily could have brought all of the claims it now seeks to add at the outset of this litigation. [7] This is because that Provision has not substantively changed since it was first enacted in 2021. Indeed, CDIA makes no effort to explain why it has "newly available claims" with respect to the Economic Abuse Provision. Instead, it discusses only why the amendments to the Medical Debt Provision give rise to new

---

[7] CDIA suggests in its motion to amend that it is only seeking to bring additional claims against the Medical Debt Ban. *See, e.g.,* M. to Amend, at 1. But its proposed amended complaint asserts the new preemption and First Amendment claims against both the Medical Debt Ban and the Economic Abuse Provision, despite that the latter has not been amended. *See* Ex. A to M. to Amend, ¶¶ 114-118, 135

claims.   CDIA has unduly delayed in seeking to assert new claims against the Economic Abuse Provision and it should not be allowed to amend its complaint with respect to that Provision.

Nor should CDIA be allowed to amend its complaint with respect to the Medical Debt Provision.  While the Medical Debt Provision was amended, those amendments do not give rise to any new claims.  According to CDIA, the amendments give rise to a preemption claim under 15 U.S.C. § 1681t(a) because the Medical Debt Ban's prohibition on the reporting of medical debt is "inconsistent with the requirements, provisions, and purpose of the FCRA in establishing a uniform nationwide standard for the consumer reporting system."  Ex. A to M. to Amend., ¶ 117; *see also id*., ¶ 89 (a ban on reporting certain information is "inconsistent with the FCRA's fundamental purpose, which is to achieve a uniform, nationwide standard . . . regarding what kinds of information may be reported in a consumer report and for how long.").  CDIA does not explain, though, why the original Medical Debt Provision, which was simply a more limited ban on the reporting of certain information, was not also inconsistent with FCRA's supposed purpose of creating a uniform national standard.  CDIA's argument is that states are preempted from imposing their own requirements on the content of credit reports because that would make it impossible to have a uniform federal standard for credit reports.  If that argument were correct (and to be clear, it is not), it is impossible to see how the original Medical Debt Provision, which prohibited the reporting of some medical debt that FCRA allowed, was not also inconsistent with having a uniform standard.

Similarly, CDIA argues that the amendments to the Medical Debt Provision give rise to an implied preemption claim because "the Medical Debt Ban stands as an obstacle to Congress's objectives of complete, accurate, and uniform consumer reporting."  *Id*., ¶17; *see also id*., ¶ 118. Again, CDIA does not explain why the original Medical Debt Provision did not also stand as an

7

obstacle to Congress's supposed objectives.  That Provision similarly prohibited the reporting of some information that FCRA allowed.

Nor do the amendments to the Medical Debt Provision give rise to any First Amendment claims that were not available to CDIA six years ago.  According to CDIA, the Medical Debt Ban is "a content-based restriction on truthful, non-misleading commercial speech." *Id.*, ¶ 18; *see also id.*, ¶ 9 (stating that the Medical Debt Ban "unconstitutionally suppresses truthful commercial speech").  It is not narrowly tailored, says CDIA, because "it creates a ban that treats all medical debt the same, regardless of whether it was incurred as the result of an emergency, an illness, or purely elective, non-essential treatments." *Id.*, ¶ 19.  And, says CDIA, it fails to "advance directly a substantial government interest" because it "targets only the inclusion of medical debt information in consumer reports" and does not "not expunge the debt, nor does it prevent medical debt from being collected, enforced, or spoken about" in contexts other than consumer reports. *Id.*, ¶¶ 97-98; see also *id.*, ¶ 130 ("The Medical Debt Ban purports to restrict truthful, non-misleading commercial speech without directly and materially advancing a substantial state interest in a manner no more extensive than necessary to serve that interest, and therefore intrudes upon Plaintiffs' federally protected right of free speech guaranteed under the First Amendment of the U.S. Constitution.").  CDIA does not explain, though, why the original Medical Debt Provision, which addressed only truthful information about medical debt, treated all medical debt the same regardless of why it was incurred, did not expunge any debt, and served the exact same interest as the new Medical Debt Ban, did not give rise to a First Amendment claim.

For CDIA to demonstrate that the Medical Debt Ban gives rise to new claims which CDIA did not have before, it would have to concede that the original Medical Debt Provision was <u>not</u>

inconsistent with FCRA, did <u>not</u> stand as an obstacle to Congress' objectives, and did <u>not</u> violate the First Amendment.  CDIA, at least to date, has not made such a concession.

Allowing CDIA to amend its complaint would also result in increased burdens and delay resolution of the case.  The original complaint, which alleged a single preemption claim, essentially presented only legal issues (how to interpret the FCRA provisions at issue) and could be resolved on a stipulated record.  *See* ECF Nos. 12-16.  It is unlikely that CDIA's proposed First Amendment claim, on the other hand, can be as efficiently litigated.  First, presumably in support of its First Amendment claim, CDIA alleges that the Medical Debt Ban harms Maine consumers and healthcare providers and "impose[s] a higher cost of doing business in Maine."  Ex. A to M. to Amend., ¶¶ 19-25, 51-52.  Second, as CDIA alleges, resolution of its First Amendment challenge will require the Court to consider whether the Medical Debt Ban "'directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest.'"  *Id*., ¶ 94 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011)).  CDIA claims that the Ban fails this test because it imposes "significant burdens upon both speakers and listeners," does not "expunge the debt" or "prevent medical debt from being collected, enforced, or spoken about" outside of consumer reports, "does not account for the circumstances of the debt or the consumer," prevents the collection of medical debt, and makes consumer reports "less accurate and less trustworthy."  *Id*., ¶¶ 95, 98, 101-03.  This raises factual issues.  It is thus likely that resolution of the First Amendment claim will require discovery (and perhaps expert testimony), and cannot be resolved on a stipulated record.  Given that this case is already over six years old, defendants would be unduly prejudiced by essentially having to completely start over the litigation.[8]

---

[8] CDIA agrees that "[t]he assessment of prejudice considers whether allowance of an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."  M. to Amend, 9-10.  But CDIA makes no effort to claim that its proposed amended complaint will not require discovery, nor does it claim that defendants will not have to defend against new facts and theories.

The amended complaint also adds a new party – a furnisher of information to consumer reporting agencies.  *Id*., ¶ 30.  As an initial matter, to the extent the furnisher seeks to challenge the Economic Abuse Provision, it has engaged in undue delay.  There is no reason that it could not have joined this case at the outset, and it should not be allowed to challenge that Provision now.  Nor should it be allowed to join this case to challenge the Medical Debt Ban.  For the last six years, this case has been litigated solely with respect to FCRA provisions relating to consumer reporting agencies.  The furnisher seeks to join to assert a claim that the Medical Debt Ban is preempted by a FCRA provision relating to furnishers.  15 U.S.C. § 1681t(b)(1)(F).  At this late date, CDIA should not be permitted to interject this new issue.

### Conclusion

For the reasons stated above, defendants respectfully request that the Court deny CDIA's motion to amend.

Dated:  January 30, 2026

AARON M. FREY
Attorney General

/s/ Christopher C. Taub
Christopher C. Taub
Chief Dep. Atty. General
Christopher.C.Taub@maine.gov
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 30th day of January, 2026, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

<u>/s/ Christopher C. Taub</u>
Christopher C. Taub
Chief Dep. Atty. General
Christopher.C.Taub@maine.gov
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800